No. 23-55133

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JANE DOE, et al.,
Plaintiffs-Appellants,

v.

ROB BONTA, in his official capacity as
Attorney General of the State of California, et al.,
Defendants-Appellees.

ON APPEAL THE UNITED STATES DISTRICT COURT
FOR THE SOUTHRN DISTRICT OF CALIFORNIA
No. 22-CV-10-LAB-DEB
Honorable Larry A. Burns

## AMICUS BRIEF OF
## SAFARI CLUB INTERNATIONAL

Regina Lennox
Jeremy E. Clare
Safari Club International
501 2nd Street NE
Washington, DC  20002
Telephone: 202-543-8733
Facsimile:  202-403-2244
rlennox@safariclub.org
jclare@safariclub.org

*Attorneys for Amicus Curiae*
*Safari Club International*

## CORPORATE DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1(a), Amicus Curiae Safari Club International

submits the following Corporate Disclosure Statement:

Safari Club International is a nonprofit corporation incorporated in the State

of Arizona, operating under § 501(c)(4) of the Internal Revenue Code. Safari Club

International is not publicly traded and has no parent corporation. There is no

publicly held corporation that owns 10 percent or more of its stock.

DATED June 23, 2023.

*/s/ Regina Lennox*
Regina Lennox

*Attorney for Amicus Curiae*
*Safari Club International*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTERESTS OF THE AMICUS ............................................................... 1

ARGUMENT ......................................................................................... 2

  A.  AB 173 Covers the Second Amendment Rights of Hunters and Firearm Owners. .................................................................................... 3

     a. The District Court Misapplied the *Bruen* Test. .......................... 4

     b.  AB 173 Burdens and Chills the Exercise of Second Amendment Rights by Hunters and Firearm Owners. ............................................. 7

     c.  AB 173 Will Harm Conservation and Management Programs in California. ................................................................................. 10

  B.  AB 173 Violates the Privacy Rights of Hunters and Other Firearm Owners. .................................................................................... 13

CONCLUSION ................................................................................... 18

CERTIFICATE OF SERVICE ............................................................... 19

i

# TABLE OF AUTHORITIES

## Cases

*Antonyuk v. Hochul*, No. 22-cv-986, 2022 WL 16744700
(N.D.N.Y. Nov. 7, 2022) .........................................................6

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................4

*In re Crawford*, 194 F.3d 954 (9th Cir. 1999) ............................................ 8, 13, 14

*Kev, Inc. v. Kitsap Cnty.*, 793 F.2d 1053 (9th Cir. 1986) ........................................5

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) .................. 4, 6, 7

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ......................................5

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ....17

*Teixeira v. Cnty. of Alamdea*, 873 F.3d 670 (9th Cir. 2017) ......................................4

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).......................................................... 14, 15

*Whalen v. Roe*, 429 U.S. 589 (1977) ......................................13

## Statutes

18 U.S.C. §§ 921 et seq..............................................................14

2022 N.Y. Sess. Laws ch. 371 ......................................................6

Cal. Civ. Code § 1798.1................................................................13

Cal. Fish & Game Code § 2009 ....................................................9

N.Y. Penal Law § 400.00(1) ........................................................6

## Other Authorities

J.O. Usman, The Game Is Afoot: Constitutionalizing the Right to Hunt and Fish in the Tennessee Constitution, 77 Tenn. L. Rev. 57 (2009) ......................................4

M. Frassetto, Firearms & Weapons Legislation up to the Early Twentieth Century (Jan. 15, 2013)...........................................................5

R.J. Spitzer, Gun Law History in the U.S. & Second Amend. Rights, 80 L. & Contemp. Probs. 55 (2017)....................................................4

## Constitutional Provisions

Cal. Const. art. I, § 1 ..................................................................13

Fourteenth Amendment ...................................................... 3, 13, 18

Second Amendment violation........................................... passim

# INTERESTS OF THE AMICUS

Safari Club International ("SCI") is a nonprofit membership organization incorporated in Arizona.[1]  Founded in Los Angeles and headquartered in Washington, D.C., SCI has approximately 70,000 members and advocates and 200 chapters throughout the U.S. and around the world.  SCI has nine chapters in California.  Approximately 10% of SCI's members live in California.

SCI's missions are to protect the freedom to hunt, educate the public about hunting and its use as a conservation tool, and promote wildlife conservation worldwide.  SCI is a leader in educating elected officials and policymakers on the essential role of hunting in the science-based management of wildlife and habitat. SCI advocates for hunting rights and hunting access, which includes protecting traditional methods and means of harvest.  Firearm use is a traditional method of harvest.  A firearm is usually the first method that a new hunter of any age learns to use.  Likewise, most youth hunters start with small-caliber firearms for hunting small game.  SCI has filed suit or amicus briefs to defend the use of firearms for lawful hunting.  As a few examples: SCI recently led a coalition of sportsmen's and sportswomen's organizations in filing an amicus brief in opposition to an

---

[1] SCI affirms that no counsel for any party authored this brief in whole or in part, no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than SCI, its members, or its counsel have made a monetary contribution to this brief's preparation or submission.  All parties have consented to the filing of this brief.

Oregon state law that effectively bans the acquisition of new firearms. SCI also challenged a California law that prohibits advertising firearms and related products to minors, due to the law's overly broad language and potential negative impact on youth hunting.[2]

## **ARGUMENT**

The district court's order dismissing Appellant's Second and Fourteenth Amendment claims should be reversed for at least three reasons. First, the district court misapplied the Supreme Court's recently stated test for a Second Amendment violation. It does not matter if the burdens of Assembly Bill 173 ("AB 173") are "ministerial" (which they are not); AB 173 infringes and effectively prohibits the legal acquisition of firearms. For this reason, AB 173 implicates the right to bear arms. The district court erred by dismissing this claim on the first step of the analysis.

Second, even if Appellants were required to demonstrate a "harm" from the disclosure of their personal information and firearms purchase history (which they are not), Appellants met this burden. It is more than plausible that lawful firearm owners, like the hunters SCI represents, will be harassed if their names and firearm ownership records are publicly disclosed. Harassment based on the personal

---

[2] *Oregon Firearms Fed'n Inc. v. Brown*, No. 2:22-cv-1815 (lead case) (D. Oregon), SCI amicus brief filed at Dkt. 220-1 (May 30, 2023); *Safari Club Int'l v. Bonta*, No. 2:22-at-819 (E.D. Cal.), on appeal to the Ninth Circuit, No. 23-15199.

exercise of Second Amendment and hunting rights is not uncommon. The district court again erred by not proceeding to the second step of the analysis—which AB 173 will undoubtedly fail.

Third, Appellants plausibly alleged a violation of the Fourteenth Amendment's right to privacy. A court must balance several factors in determining whether AB 173's forced disclosure advances a legitimate state interest, and whether AB 173's provisions are narrowly tailored to serve that interest. The balance tips against disclosure of the personal information of law-abiding firearm owners. This information is not necessary to support research on **un**lawful gun violence. Further, AB 173's disclosure of firearm ownership records to third-party researchers improperly interferes with the privacy of family life and child-rearing choices protected by the Fourteenth Amendment.

Accordingly, this Court should reverse the district court's dismissal and reinstate Appellants' First Amended Complaint.

### A. <u>AB 173 Covers the Second Amendment Rights of Hunters and Firearm Owners</u>.

AB 173 unconstitutionally burdens the protected Second Amendment rights of SCI members and other hunters in California. In analyzing whether Second Amendment rights are violated, the Supreme Court has recently defined a two-step test in *New York State Rifle and Pistol Association v. Bruen*. A court must first determine whether the challenged law infringes on protected conduct. "When the

3

Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. 2111, 2126, 2129–30 (2022). If so, the burden of justifying the law shifts to the government: "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

### A. The District Court Misapplied the <u>Bruen</u> Test.

The Second Amendment's plain text identifies the right to keep and bear arms. This right "'wouldn't mean much' without the ability to acquire arms." *E.g.*, *Teixeira v. Cnty. of Alamdea*, 873 F.3d 670, 677 (9th Cir. 2017) (citations omitted). The right to keep and bear arms for lawful hunting has long been protected by the Second Amendment. *E.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008) ("The prefatory clause [of the Second Amendment] does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting"). Since the founding of this country, states have allowed, and continue to allow, hunting using firearms. *E.g.*, R.J. Spitzer, Gun Law History in the U.S. & Second Amend. Rights, 80 L. & Contemp. Probs. 55, 60 (2017); J.O. Usman, The Game Is Afoot: Constitutionalizing the Right to Hunt and Fish in the Tennessee Constitution, 77 Tenn. L. Rev. 57, 80–81 (2009). Historical restrictions on the use of firearms for hunting were limited. *See* M. Frassetto, Firearms &

Weapons Legislation up to the Early Twentieth Century (Jan. 15, 2013) (describing restrictions on hunting season, location, and time of day, but not type or use of firearms). Contrary to this traditional use and despite the absence of historical restriction, AB 173 infringes on the ability of California hunters to obtain firearms for hunting.[3]

The district court erroneously found the first step of the *Bruen* analysis was not met, because AB 173 does not cover conduct protected by the Second Amendment. The court analogized AB 173 to "[l]icensing requirements, fingerprinting, background checks, and mandatory gun safety training courses," which the court held to be "ministerial" regulations that do not burden exercise of Second Amendment rights.[4] ER014, ER016. But AB 173 is not a licensing or fingerprinting requirement, a background check, or a gun safety training course requirement. Rather, it mandates that a firearm purchaser's personal information and firearms ownership be shared with gun violence researchers. AB 173 contains no "opt out" provision. Thus, a potential purchaser has a binary choice:

---

[3] As the district court properly noted, a Constitutional violation is caused not only by an express prohibition or limitation on an individual's conduct, but where the government regulation chills an individual's exercise of that right. ER019 (citing *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016)).

[4] This court has rejected the conclusion that a so-called "ministerial" burden cannot violate Constitutional rights. In *Kev, Inc. v. Kitsap County*, this Court struck a county's five-day waiting period for obtaining a nude-dancing license, finding it "unreasonably prevent[ed] a dancer from exercising first amendment rights while an application [was] pending." 793 F.2d 1053, 1060 (9th Cir. 1986).

information disclosure, or no firearm.  Because it forces this binary choice, AB 173 is an effective ban on the purchase of firearms, which violates the Second Amendment.

A recent decision from the Northern District of New York supports this point.  Days after the *Bruen* case invalidated a New York concealed carry law, the state legislature responded by passing the Concealed Carry Improvement Act. 2022 N.Y. Sess. Laws ch. 371.  Under that act, an applicant for a concealed carry license no longer had to show that they had "proper cause" to exercise their rights. However, license applicants had to provide extensive personal information, including but not limited to information about other adults sharing the applicant's residence, providing four personal character references, and identifying all current and former social media accounts.  N.Y. Penal Law § 400.00(1).  A district court enjoined enforcement of most of these provisions.  *Antonyuk v. Hochul*, No. 22-cv-986, 2022 WL 16744700, \*\*41–53 (N.D.N.Y. Nov. 7, 2022).  The court did not find these requirements to be "ministerial," but recognized that each one "burdens law-abiding citizens' right to armed self-defense by prohibiting a person from carrying a concealed handgun in public for self-defense unless he or she provides a licensing officer with" the required information.  *Id.* at \*43.  The court then proceeded to the second step of the *Bruen* analysis.  Here, the district court

6

likewise should have proceeded to the second step of the *Bruen* analysis. Because the district court failed to properly apply this test, its decision should be reversed.

> **b. AB 173 Burdens and Chills the Exercise of Second Amendment Rights by Hunters and Firearm Owners.**

The district court incorrectly dismissed Appellants' First Amended Complaint due to "speculative" allegations of harm that may result from disclosure of Appellants' (and other individuals') personal information and firearms ownership history. ER017. This misinterprets *Bruen*. Under *Bruen*, Appellants need only show that AB 173 affects their Second Amendment Rights—which it does, as discussed above. Once that showing is made, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. The district court erred by failing to address this point. And as explained in Appellants' brief, the State has not and cannot identify a historical analogue to justify AB 173. Appellants' Br. (filed June 16, 2023) at 61–67.

But even if Appellants are required (which they are not) to identify harms that arise from sharing firearm purchasers' personal information and firearm ownership with third-party research organizations, they have done so. The risk of disclosure is self-evident: the more times a person's information is shared and the more places it is stored, the greater the opportunity for inadvertent or intentional

7

disclosure.[5]  (It cannot be forgotten that the California Department of Justice made confidential firearm purchaser information publicly available on its website, *see* ER008–009.)  And some individuals and organizations are more than willing to obtain the personal information of those who exercise their Second Amendment or hunting rights, to use that information for defamatory purposes.

As one example, in 2016 a member or employee of Humane Society of the United States ("HSUS") joined SCI to access SCI's "Record Book."  The Record Book provides an opportunity for hunters to submit hunting records.  These records memorialize each person's hunt and the animals harvested.  They are used to study trophy quality over time in wildlife populations.  And if the hunter chooses, the Record Book entry can be used to apply for special hunting awards.  Despite website terms prohibiting unauthorized use of website materials, HSUS accessed Record Book data to criticize SCI and its members, and to publicize false and malicious statements about regulated hunting and specific SCI members.  This egregious "report" is titled "Trophy Madness," which by itself demonstrates its defamatory nature.[6]  In it, HSUS misappropriated the images of a number of SCI members.  Worst of all, it calls out specific SCI members, misrepresenting facts or

---

[5] The district court acknowledged as much.  ER018 (citing *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999)).

[6] This document is available at: https://blog.humanesociety.org/wp-content/uploads/2016/06/Trophy-Madness-Report.pdf.

employing derogatory language to suggest that these individuals—who legally hunted each animal in the Record Book and who have invested hundreds of thousands of dollars in conservation programs around the world—did something wrong.

The district court states that Appellants "hypothesize" and "surmise" the risk of harassment resulting from disclosure of firearm purchasers' personal information and firearms ownership, and concludes that these allegations are "entirely speculative and predictive of harm that is completely attenuated from the plain text and core protections of the Second Amendment." ER017. That is erroneous. The risk of harassment is not only real but, as SCI's example demonstrates, it is more than plausible. Hunters have been harassed for hunting simply because some organizations do not agree with hunting's traditional role as a sport and conservation and management tool.[7] It is not a stretch to believe that firearms owners will be harassed for owning firearms by those who do not agree with the exercise of Second Amendment rights. Without AB 173, researchers and others in their research programs would not have access to the personal information of firearm owners. AB 173 creates opportunity for the unauthorized and unlawful disclosure of that information.

---

[7] California is among the many states that have passed laws preventing hunter harassment. *See* Cal. Fish & Game Code § 2009.

Further, while the district court questions whether someone who works for these university "gun research organizations" would have motive to publicly disclose or abuse firearm owners' information, SCI's example shows that this allegation is more than plausible. The district court inappropriately minimizes the potential for improper disclosure. The university programs at issue are not "gun research organizations," as the district court labels them. ER0018. They are centers for "violence prevention," with a specific focus on the prevention of "firearm violence."[8] By definition, they assume a connection between firearms, violence, and crime. Again, it is plausible to assume that the risk of an ideologically motivated person intentionally disclosing personal information and firearms purchase histories would be greater in an organization whose stated purpose is anti-firearm.

### c. AB 173 Will Harm Conservation and Management Programs in California.

Practically speaking, AB 173's forced disclosure is even more problematic because it diminishes the future of hunting by chilling and disincentivizing participation. It undermines the California Department of Fish and Wildlife's ("CDFW") hunter recruitment, retention, and reactivation efforts ("R3"). CDFW has developed a "Hunting and Fishing R3 Action Plan," which recognizes that

---

[8] *See, e.g.*, the website for the University of California—Davis Violence Prevention Research Program, https://health.ucdavis.edu/vprp/.

"[h]unters and anglers help sustain a multi-billion-dollar outdoor recreation industry and provide some of the primary funding to CDFW," and "[t]he decline in participation poses an ever-increasing threat to wildlife conservation…."[9] This is no exaggeration. Hunting and recreational shooting generate essential management revenue for CDFW through the Pittman-Robertson Federal Aid in Wildlife Restoration Act.

The Act imposes an 11% excise tax on every purchase of firearms, ammunition, and hunting equipment. Under the Act, the U.S. Fish and Wildlife Service distributes excise tax revenue based on a formula tallying each state's land and water area and the number of paid recreational hunting and fishing license holders. Grant funds are used for projects to restore, conserve, manage, and enhance wild birds and mammals and their habitats. In 2023, the Fish and Wildlife Service distributed a record $1.6 billion in Pittman-Robertson Act and related funds, including almost $39 million in Pittman-Robertson funds for CDFW.[10] Reducing hunter participation and firearm sales, and making it more difficult to

---

[9] CDFW, R3: California Hunting and Fishing Recruitment, Retention and Reactivation Action Plan (Jan. 2019), available at https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=165196&inline ("R3 Action Plan"), at 1. SCI was among the organizations that advised CDFW in developing this plan. R3 Action Plan at 48.

[10] U.S. Fish and Wildlife Service, Final Apportionment of Pittman-Robertson Wildlife Restoration Funds for Fiscal Year 2023, available at https://www.fws.gov/sites/default/files/documents/WR%20Final%20apportionment%20table%20-%20FY%2023%20Review.pdf.

hunt (thus potentially cutting license sales), will decrease this critical funding for CDFW. It will cause CDFW to have fewer resources to invest, and thereby harm California's wildlife, habitat, and conservation efforts.

Unsurprisingly, the R3 Action Plan's mission is "to increase statewide hunting and fishing participation by collaborating with diverse stakeholders to transform barriers into opportunities."[11] But AB 173's binary choice—again, a hunter must disclose his or her personal information and firearm ownership to third-party universities, or forgo purchasing a firearm—will deter new hunters and sport shooters from entering the sport because they cannot obtain the proper tools. For the same reason, AB 173 will reduce youth hunter participation. AB 173 infringes upon the lawful use and ownership of firearms, without justification; in so doing, it impedes the next generation of hunters' ability to lawfully engage in this protected activity.

For these reasons and the reasons in Appellants' brief, SCI requests that the Court reverse the district court's ruling and find that AB 173 violates the Second Amendment.

---

[11] R3 Action Plan at 2.

**B. <u>AB 173 Violates the Privacy Rights of Hunters and Other Firearm Owners.</u>**

The district court erred in finding that Appellants failed to state a claim for violation of the Fourteenth Amendment right to privacy. The federal Constitution protects "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977).[12] In assessing whether a law violates this right, a court must "engage in the delicate task of weighing competing interests to determine whether the government may properly disclose private information." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) (internal quotation and citation omitted). The court weighs several factors, including: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004),

---

[12] Article 1, Section 1 of the California Constitution provides an even more extensive "inalienable right" to privacy. Cal. Const. art. I, § 1. In applying this provision, the California legislature has declared "the right to privacy is a personal and fundamental right," and "all individuals have a right of privacy in information pertaining to them." In adopting the Information Practices Act of 1977, the legislature found that the right to privacy was "threatened" by "indiscriminate … dissemination of personal information," and the risk was "magnified" by increasing use of computers and other sophisticated technology. Cal. Civ. Code § 1798.1.

*abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). "[T]he government has the burden of showing that its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Crawford*, 194 F.3d at 959 (internal quotation and citation omitted).

AB 173 provides for the unredacted disclosure of personal information including the names, addresses, Social Security numbers, and firearm purchase history of firearm owners. But there is no need for this personal information to be disclosed. The State has not suggested that any of these lawful firearm owners are criminals or sources of firearms violence.[13] The only connection between "violence" and these citizens is the fact they own a firearm. And if the firearm is the research focus, then information about the firearm is all that should be disclosed. The information that connects the firearm to the individual—names and addresses, etc.—is unnecessary.

In *Tucson Woman's Clinic*, this Court found unconstitutional an Arizona statute allowing all employees of the state Department of Health Services to access unredacted personal information and medical records from private clinics that provided abortions. 379 F.3d at 551. Among other things, the Court found the

---

[13] Under the federal Gun Control Act of 1968, felons and violent offenders cannot obtain firearms. 18 U.S.C. §§ 921 et seq.

statute violated patient privacy rights by authorizing unnecessary disclosure of personal information. *Id.* at 552 (finding "little, if any, need for much of this information, such as the names and addresses of patients," when the state could access redacted records to serve its interest in ensuring compliance with clinic standards and licensing). The Court further found the harm caused by unauthorized disclosure of personal information and medical records of women who had abortions was "obviously tremendous." *Id.* As in *Tucson Woman's Clinic*, AB 173 allows broad access to unredacted personal information, without any showing of need for personal information.

Further, the potential for harm from non-consensual disclosure of personal information coupled with firearm ownership is obvious and significant. As explained above, certain individuals or organizations would undoubtedly love to conduct a "smear campaign" on lawful firearm owners. Hunters experience this type of persecution regularly. The HSUS report is but one example. Even publicly available information, like social media posts, can be taken, twisted, and used to the detriment of people engaged in lawful hunting, including those hunting with firearms. For this reason, not everyone is public about their hunting activities or firearm ownership. They do not want to risk losing their jobs,[14] receiving hateful

---

[14] For example, in 2020 an executive in California was fired based on a 15-year-old photo that someone found online and sent to his company, which showed him with

social media comments,[15] or having protesters outside their door.[16]  And while there is no official "firearms record book," the way SCI maintains a Record Book of successful hunts, California has essentially created one by collecting, compiling, and disclosing firearm owner information and firearm purchase history.

Finally, the Constitutional privacy right protects the sanctity of the most intimate aspects of life, such as raising a family.  As the Supreme Court has explained, "[i]t is a promise of the Constitution that there is a realm of personal liberty which the government may not enter … [T]he Constitution places limits on

---

a lion he had legally hunted.  The company responded to backlash from PETA in terminating this executive.  *E.g.*, S. Mukherjee, Nordic Aquafarms exec fired after admitting to shooting, killing a lion, Times Standard (Jan. 9, 2020), https://www.times-standard.com/2020/01/09/nordic-aquafarms-exec-fired-after-admitting-to-shooting-killing-a-lion/.

[15] For example, a 19-year-old Texas woman was subjected to online attacks, including death threats, for posting photos of her successful African hunts on social media.  Animal rights activists created an "official Hate Page" against her on Facebook.  *E.g.*, D. Stanglin, Texas cheerleader, big game hunter shrugs off critics, USA Today (July 2, 2014), https://www.usatoday.com/story/news/nation/2014/07/02/texas-cheerleader-big-game-hunter-facebook-critics-backlash/12012007/.

Former NFL quarterback Jay Cutler has also recently been criticized in ill-informed media reports after posting a photograph of a successful, legal bear hunt in Montana.  *E.g.*, "Jay Cutler: Forget Playing For The Bears ... I Hunt Them Now!!!," TMZ (May 31, 2023), https://www.tmz.com/2023/05/31/jay-cutler-kills-bear-during-hunt-in-montana/.

[16] Dr. Walter Palmer was publicly attacked, to the point of activists protesting his home and business, after his lion hunt became international news in 2016.  *E.g.*, P. Walsh, Walter Palmer speaks: Hunter who killed lion will resume Bloomington dental practice, Star Tribune (July 29, 2018), https://www.startribune.com/walter-palmer-speaks-hunter-who-killed-lion-will-resume-dental-practice-tuesday/325185401/.

a State's right to interfere with a person's most basic decisions about family and parenthood." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 847–49 (1992), *overruled on other grounds by Dobbs*, 142 S. Ct. 2228. Personal decisions relating to family relationships and child-rearing are afforded strict Constitutional protection. *Id.* at 851 ("These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment."). AB 173 implicates the personal choice of hunters to raise their children in the hunting tradition. Many young hunters start out using firearms. Parents purchase firearms for their children to use for lawful hunting. Guns purchased for youth hunting may be more easily identified as such based on the size, type, and caliber purchased. By turning that information over to third-party researchers, the State is telling them something about how children are being raised in pro-hunting families. This disclosure implicates "a realm of personal liberty which the government may not enter." *Casey*, 505 U.S. at 847.

The district court concluded that the right to privacy was not violated because "[t]he gun and ammunition purchase records collected by the DOJ are routine ministerial records required by federal and California law." ER021–22. That holding misses the point. AB 173 takes this information (that the individual is forced to disclose when exercising their Second Amendment rights), and makes

17

it available to anti-firearm researchers. The nature of the collection is less problematic than the nature of the disclosure, which is not narrowly tailored to advance a legitimate state interest. Moreover, even if the records are collected under federal law, most personal information is **destroyed** by the Federal Bureau of Investigation ("FBI") system at some point from 24 hours to not more than 90 days after collection. 28 C.F.R. § 25.9(b)(1)(iii). The FBI does not retain the personal information stemming from valid firearm sales—and it certainly does not turn this information over to third parties. Accordingly, SCI doubts the State has or can have any legitimate interest in turning over the names, addresses, and Social Security Numbers of legal firearm owners to a university research center in the first place. But certainly, if the State does have some interest in preventing crime, that interest is not being served when these individuals are not known criminals.

For these reasons and the reasons in Appellants' brief, SCI requests that the Court reverse the district court's ruling and find that AB 173 violates the Fourteenth Amendment right to privacy.

## **CONCLUSION**

For the foregoing reasons, SCI respectfully requests that the Court reverse the district court's ruling and remand for further proceedings.

DATED June 23, 2023.

Respectfully submitted,

18

*/s/ Regina Lennox*
Regina Lennox
Jeremy E. Clare
Safari Club International
501 2nd Street NE
Washington, DC  20002
Telephone: 202-543-8733
Facsimile:  202-403-2244
rlennox@safariclub.org
jclare@safariclub.org

*Attorneys for Amicus Curiae*
*Safari Club International*

## CERTIFICATE OF SERVICE

I certify that on June 23, 2023, I electronically filed the foregoing with the

Clerk of the Court using the appellate CM/ECF system, which provides electronic

service to all counsel of record.

Respectfully submitted,

*/s/ Regina Lennox*
Regina Lennox

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55133

I am the attorney or self-represented party.

**This brief contains** | 4,193 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Regina Lennox | **Date** | 06/23/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*