23-55133

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**JANE DOE, an individual, et al.,**

Plaintiffs,

    **v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,**

Defendants.

---

On Appeal from the United States District Court
for the Southern District of California

No. 3:22-cv-00010-AJB-DEB
The Honorable Larry A. Burns, Judge

### ANSWERING BRIEF

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
PAUL STEIN
Supervising Deputy Attorney General
SEBASTIAN BRADY (SBN 330904)
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3592
  Fax: (415) 703-5480
  Email: Sebastian.Brady@doj.ca.gov
*Attorneys for Defendant Attorney General Rob Bonta*

# TABLE OF CONTENTS

**Page**

Jurisdictional Statement ........................................................................1

Introduction ...........................................................................................1

Statement of Issues ...............................................................................3

Statement Regarding Addendum...........................................................3

Statement of the Case............................................................................3

    I.     Statutory Background ................................................................3

        A.    The Datasets ....................................................................3

            1.    Automated Firearms System ...............................3

            2.    Ammunition Purchase Records File....................6

        B.    Information-Sharing with Vetted Researchers................7

    II.    Procedural History ....................................................................9

        A.    Plaintiffs Challenge AB 173 on Several Grounds...........9

        B.    The District Court Dismisses the Complaint ...............12

Standard of Review..............................................................................15

Summary of Argument ........................................................................15

Argument..............................................................................................18

    I.     Plaintiffs' Informational Privacy Claim Fails as a Matter
        of Law ......................................................................................18

        A.    AB 173 Does Not Implicate Constitutionally
            Protected Information .................................................18

            1.    AFS and APRF do not contain highly
                sensitive personal information .........................19

            2.    Plaintiffs' arguments regarding social
                security numbers are factually and legally
                flawed........................................................22

            3.    State law does not create a constitutional
                right to privacy in AFS and APRF data.............25

i

**TABLE OF CONTENTS**
**(continued)**

Page

B.     AB 173 Does Not Impermissibly Invade Plaintiffs'
Right to Informational Privacy.....................................29

II.     AB 173 Does Not Violate the Second Amendment on Its
Face ..........................................................................................34

A.     Plaintiffs' Self-Imposed Injury Does Not Grant
Them Standing............................................................34

B.     AB 173 Does Not Violate the Second Amendment
Under *Bruen* ..............................................................37

C.     Plaintiffs' Chilling Claim Has No Basis in the Law .....43

D.     Plaintiffs Waived Their Unconstitutional
Conditions Claim, Which Fails in Any Event ..............46

III.     Plaintiffs' Retroactivity Claim Fails as a Matter of Law ........47

IV.     Plaintiffs' Preemption Claim Fails as a Matter of Law...........49

Conclusion.................................................................................51

Statement of Related Cases.......................................................52

# TABLE OF AUTHORITIES

**Page**

CASES

*A.C. ex rel. Park v. Cortez*
    34 F.4th 783 (9th Cir. 2022)....................................................... 19, 20, 31

*Armstrong v. Exceptional Child Ctr., Inc.*
    575 U.S. 320 (2015)................................................................................50

*Bingham v. Holder*
    637 F.3d 1040 (9th Cir. 2011)................................................................47

*Bowers v. Whitman*
    671 F.3d 905 (9th Cir. 2012)..................................................................48

*Brandeis v. Bonta*
    No. 37-2022-00003676-CU-CR-CTL, 2022 Cal. Super.
    LEXIS 72360 (San Diego Super. Ct. Oct. 15, 2022) ..............................12

*CBS, Inc. v. Block*
    725 P.2d 470 (Cal. 1986) .......................................................................29

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)..........................................................................36, 37

*Ctr. for Biological Diversity v. Kempthorne*
    588 F.3d 701 (9th Cir. 2009)..................................................................34

*Def. Distributed v. Bonta*
    2022 WL 15524977 (C.D. Cal. Oct. 21, 2022).......................................40

*District of Columbia v. Heller*
    554 U.S. 570 (2008)........................................................................*passim*

*Dittman v. California*
    191 F.3d 1020 (9th Cir. 1999)................................................................50

# TABLE OF AUTHORITIES
## (continued)

Page

*Doe v. Att'y Gen. of U.S.*
941 F.2d 780 (9th Cir. 1991).................................................................19

*Doe v. Garland*
17 F.4th 941 (9th Cir. 2021).....................................................19, 21, 25

*Eagle v. Morgan*
88 F.3d 620 (8th Cir. 1996)...................................................................26

*Endy v. County of Los Angeles*
975 F.3d 757 (9th Cir. 2020).........................................................18, 29

*Hall v. Smosh Dot Com, Inc.*
72 F.4th 983 (9th Cir. 2023)................................................................35

*Hillis v. Heineman*
626 F.3d 1014 (9th Cir. 2010)..............................................................46

*Hotop v. City of San Jose*
982 F.3d 710 (9th Cir. 2020)................................................................47

*In re Crawford*
194 F.3d 954 (9th Cir. 1999)..........................................................*passim*

*In re Palmdale Hills Prop., LLC*
654 F.3d 868 (9th Cir. 2011)...................................................................1

*James v. City of Douglas*
941 F.2d 1539 (11th Cir. 1991)............................................................26

*Kanter v. Barr*
919 F.3d 437 (7th Cir. 2019)................................................................40

*L.A. Lakers, Inc. v. Fed. Ins. Co.*
869 F.3d 795 (9th Cir. 2017)................................................................15

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Mangels v. Pena*
   789 F.2d 836 (10th Cir. 1986)..............................................26

*McDonald v. City of Chicago*
   561 U.S. 742 (2010)..........................................................41

*NASA v. Nelson*
   562 U.S. 134 (2011)..............................................31, 43, 46

*Navajo Nation v. Dep't of the Interior*
   876 F.3d 1144 (9th Cir. 2017)............................................23

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
   142 S. Ct. 2111 (2022)...............................................*passim*

*Norman–Bloodsaw v. Lawrence Berkeley Lab.*
   135 F.3d 1260 (9th Cir. 1998)............................................19

*Oakland Tactical Supply, LLC v. Howell Twp.*
   2023 WL 2074298 (E.D. Mich. Feb. 17, 2023)....................40

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*
   138 S. Ct. 1365 (2018).......................................................47

*Or. Firearms Fed'n v. Kotek Or. All. for Gun Safety*
   2023 WL 4541027 (D. Or. July 14, 2023).......................24, 39

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*
   860 F.3d 1228 (9th Cir. 2017)............................................34

*Peterson v. Martinez*
   707 F.3d 1197 (10th Cir. 2013)..........................................23

*Phillips v. U.S. Customs & Border Prot.*
   74 F.4th 986 (9th Cir. 2023)..............................................24

# TABLE OF AUTHORITIES
## (continued)

Page

*Planned Parenthood of S. Arizona v. Lawall*
    307 F.3d 783 (9th Cir. 2002)...................................................19

*Polone v. CIR*
    505 F.3d 966 (9th Cir. 2007)...................................................48

*Prison Legal News v. Ryan*
    39 F.4th 1121 (9th Cir. 2022)..................................................15

*San Diego County Gun Rights Comm. v. Reno*
    98 F.3d 1121 (9th Cir. 1996)...................................................44

*Sheets v. Salt Lake County*
    45 F.3d 1383 (10th Cir. 1995)................................................26

*Silveira v. Lockyer*
    312 F.3d 1052 (9th Cir. 2002).........................................21, 45

*Summers v. Earth Island Inst.*
    555 U.S. 488 (2009)................................................................34

*Teter v. Lopez*
    --- F.4th ---- , 2023 WL 5008203 (9th Cir. Aug. 7, 2023) ......................43

*Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*
    476 U.S. 747 (1986)........................................................45, 46

*Thorne v. City of El Segundo*
    726 F.2d 459 (9th Cir. 1983)....................................... 19, 33, 34

*United States v. Alaniz*
    69 F.4th 1124 (9th Cir. 2023)..................................................38

*United States v. Reyna*
    2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ......................39

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Walls v. City of Petersburg*
  895 F.2d 188 (4th Cir. 1990)................................................................26

*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 (2008)..........................................................................25

*Whalen v. Roe*
  429 U.S. 589 (1977)..........................................................................32

*White v. Lee*
  227 F.3d 1214 (9th Cir. 2000)...........................................................45

*Wilson v. Craver*
  994 F.3d 1085 (9th Cir. 2021)...........................................................23

*Wolford v. Lopez*
  --- F. Supp. 3d ---- , 2023 WL 5043805 (D. Haw. Aug. 8,
  2023) ..................................................................................................39

*Zixiang Li v. Kerry*
  710 F.3d 995 (9th Cir. 2013)..............................................................44

**STATUTES**

United States Code, Title 5
  § 552a.................................................................................49, 50, 51
  § 552a(g)(1) ................................................................................50

United States Code, Title 28
  § 1291..............................................................................................1
  § 1331..............................................................................................1

California Civil Code
  § 1798.53 .......................................................................................45

# TABLE OF AUTHORITIES
## (continued)

Page

California Penal Code

§ 11105 .................................................................................9, 27

§ 11105(b)(8) (2021 version) ...................................................28

§ 11105(b)(11) (2021 version) .................................................28

§ 11105(b)(14) (2021 version) .................................................28

§ 11105(b)(16) (2021 version) .................................................28

§ 11105(b)(17) (2021 version) .................................................28

§ 11106 ..............................................................................*passim*

§ 11106(a) .................................................................................22

§ 11106(a)(1) ..............................................................................4

§ 11106(a)(1)(B) ..................................................................6, 23

§ 11106(a)(1)(C) ..................................................................6, 22

§ 11106(a)(1)(D) .........................................................................5

§ 11106(a)(2) (2021 version) ...................................................27

§ 11106(b) ........................................................................4, 6, 22

§ 11106(b)(2)(A) ........................................................................5

§ 11106(b)(3) (2021 version) .....................................................9

§ 11106(d) .........................................................................*passim*

§ 14230 ...............................................................................15, 30

§ 14230(a) ............................................................... 1, 7, 8, 30

§ 14230(b), (c) ...........................................................................7

§ 14230(e) .........................................................................*passim*

§ 14230(g) ..................................................................................7

§ 14231 .....................................................................................11

§ 14231(a) .................................................................................34

§ 14231(a)(2) ..............................................................................8

§ 14231(c) (2021 version) ........................................................11

§ 14231(c)(2) ...............................................................8, 11, 31

§ 14231(c)(3) ..............................................................................9

§ 26150(a) ...................................................................................5

§ 26155(a) ...................................................................................5

§ 26175(i) ..................................................................................23

§ 26175(a) .................................................................................50

§ 26175(a)(1) ..............................................................................5

# TABLE OF AUTHORITIES
## (continued)

Page

§ 26175(c) .................................................................. 5, 23, 50
§ 26225 ............................................................................. 22
§ 26225(b) ...................................................................... 6, 22
§ 26500(a) ........................................................................... 4
§ 27545 ................................................................................ 4
§ 28100(a) ........................................................................... 4
§ 28160(a) ...................................................................... 4, 20
§ 28215(c)(2) ....................................................................... 4
§ 28215(d) ........................................................................... 4
§ 28220(a)(1) ....................................................................... 4
§ 30352 ...................................................................... *passim*
§ 30352(a) ........................................................................... 6
§ 30352(b)(1) ................................................................... 6, 7
§ 30352(b)(2) ................................................... 9, 28, 31, 41

2016 California Statutes, Chapter 24
§ 30 .............................................................................. 7, 8

2021 California Statutes, Chapter 253
§ 2.5 ............................................................................. 8, 9
§ 5 .................................................................................. 11
§ 11 .................................................................................. 9

California Firearm Violence Research Act ............................. 7, 30

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Art. VI, cl. 2 ..................................................................... 49
Amend. II ................................................................. *passim*
Amend. XIV ............................................................. *passim*

**OTHER AUTHORITIES**

California Code of Regulations, Title 11
§ 4350 ................................................................................ 5

ix

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Assembly Floor Analysis of AB 173 (Sept. 8, 2021),
    *available at*
    https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xht
    ml?bill_id=202120220AB173#........................................................27, 48

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case under 28 U.S.C.

§ 1331, but it lacked subject-matter jurisdiction over the plaintiffs' Second

Amendment claim because they lack standing to raise that claim—an issue

that was not reached by the district court. *See infra* at pp. 34–37; *see also,*

*e.g.*, *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011)

("Article III standing is a necessary component of subject matter

jurisdiction."). The district court issued its order granting the defendants'

motion to dismiss on January 12, 2023. 1-ER-5. The plaintiffs timely filed

their notice of appeal on February 10, 2023. 4-ER-806. The district court

subsequently entered judgment in the defendants' favor on March 17, 2023.

1-ER-2. This Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

As the California Legislature has recognized, "[f]irearm violence is a

significant public health and public safety problem in California and

nationwide." Cal. Penal Code § 14230(a). To better understand and address

the problem, the Legislature enacted a law authorizing a limited, vetted set

of research institutions to receive certain data about firearms that the

California Department of Justice already collects and maintains. With that

data, these researchers can conduct "important, timely, policy-relevant

1

research that cannot be conducted elsewhere." *Id.* § 14230(e). At the same time, to ensure the privacy of the individuals tied to that data, California law prohibits these researchers from revealing any information identifying specific individuals.

Plaintiffs seek to facially invalidate the statutes allowing this research. All of their claims fail as a matter of law, as the district court correctly held. The limited data sharing authorized by Assembly Bill (AB) 173 does not implicate Plaintiffs' constitutional right to informational privacy. The law only authorizes the sharing of basic, biographical information—nothing like the highly sensitive and personal information this Court has said is covered by the right. Even if Plaintiffs' privacy claim got past the threshold, however, it would still fail, because any invasion of privacy is amply justified by the State's important interest in facilitating research into firearm violence, and AB 173 is narrowly tailored to promote that interest. Nor does sharing this information with researchers restrict Plaintiffs' Second Amendment rights, either directly or under the chilling and unconstitutional conditions theories Plaintiffs also advance. And AB 173 is not unconstitutionally retroactive or preempted by federal law. This Court should affirm.

2

## STATEMENT OF ISSUES

1. Whether the district court properly dismissed Plaintiffs' informational privacy claim.

2. Whether the district court properly dismissed Plaintiffs' Second Amendment claim.

3. Whether the district court properly dismissed Plaintiffs' retroactivity claim.

4. Whether the district court properly dismissed Plaintiffs' preemption claim.

## STATEMENT REGARDING ADDENDUM

All pertinent constitutional provisions and statutes are contained in the Addendum of Plaintiffs-Appellants' Opening Brief. *See* 9th Cir. R. 28-2.7.

## STATEMENT OF THE CASE

### I. STATUTORY BACKGROUND

#### A. The Datasets

##### 1. Automated Firearms System

Section 11106 of the California Penal Code has long required the California Attorney General to "keep and properly file" information pertaining to sales and transfers of firearms, lost or stolen weapons, public-carry licenses, individuals prohibited from owning or possessing firearms,

3

and more. Cal. Penal Code § 11106(a)(1), (b)(1). In keeping with the Attorney General's obligations under Section 11106, as well as numerous other statutes cross-referenced by Section 11106, the Attorney General maintains a database called the Automated Firearm System (AFS). Among other things, AFS is populated with, as relevant here, data collected by firearms dealers during sales transactions and data related to concealed carry licenses.

Firearms sales, loans, and transfers in California must generally take place through a "licensed firearms dealer." Cal. Penal Code § 27545; *see also id.* § 26500(a). A dealer must collect a variety of information about the firearm purchaser and the firearm being purchased—including the purchaser's name, date of birth, and address. *Id.* § 28160(a). This information is entered on the Dealer Record of Sale form. Once the purchaser has provided the dealer this information, the dealer transmits it to the California Department of Justice (DOJ). *Id.* § 28215(d). DOJ then uses this information to determine whether the purchaser is legally barred from possessing a firearm. *Id.* § 28220(a)(1).[1]

---

[1] The firearms dealer must retain this information for "not less than three years" from the date of the transaction. Cal. Penal Code § 28215(c)(2); *see also id.* § 28100(a) (also requiring dealers to keep this information).

4

Once a purchaser passes the background check and the firearms dealer reports the delivery of the firearm, the transaction and details are uploaded into AFS. Cal. Penal Code § 11106(a)(1)(D); Cal. Code Regs. tit. 11, § 4350; 4-ER-720. The database stores the purchaser's identifying information, including name, address, and identification card number (but not physical description), as well as information on other firearms transfers, if any. Cal. Penal Code § 11106(b)(2)(A).

California law allows county sheriffs and chiefs of municipal police departments to issue licenses that allow qualifying individuals to carry a concealed firearm, called "Carry Concealed Weapons Permits" (CCWs). Cal. Penal Code §§ 26150(a), 26155(a). State law directs that CCW applications be uniform across the State and that the Attorney General shall create application forms for this purpose. *Id.* § 26175(a)(1). These forms must include the applicant's "name, occupation, residence, . . . business address . . . age, height, weight, [and] color of eyes and hair." *Id.* § 26175(c). Plaintiffs attached to their First Amendment Complaint a prior version of the uniform application form.[2] 4-ER-704–18. That form contains a space for the applicant's social security number. 4-ER-713. On the last

---

[2] An updated version has since been published but, for these purposes, it is not materially different.

page of the form, just above where the applicant must sign that the information submitted is correct, the form provides that "[n]otwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order."  4-ER-715.

California law requires county sheriffs and chiefs of municipal police departments issuing CCWs to send to DOJ certain information about the denial of a license, the denial of an amendment to a license, the issuance of a license, the amendment of a license, and the revocation of a license.  Cal. Penal Code § 11106(a)(1)(C) (cross-referencing Cal. Penal Code § 26225(b)).  Copies of the CCWs themselves must also be sent to DOJ.  *Id.* § 11106(a)(1)(B).  Certain information from these documents is included in AFS.  *Id.* § 11106(b).  Nowhere, however, do the statutes provide that the CCW applications submitted to local licensing authorities are transmitted to DOJ and included in AFS.

## 2.  Ammunition Purchase Records File

Section 30352 of the California Penal Code requires ammunition vendors to submit information to DOJ pertaining to sales and transfers of ammunition.  Cal. Penal Code § 30352(a), (b)(1).  DOJ is required to retain

that information in a database known as the Ammunition Purchase Records File (APRF). *Id.* § 30352(b)(1).[3]

### B. Information-Sharing with Vetted Researchers

In 2016, the California Legislature enacted the California Firearm Violence Research Act in recognition of the fact that "[t]oo little is known about firearm violence and its prevention . . . because too little research has been done." 2016 Cal. Stat., ch. 24, § 30, codified at Cal. Penal Code § 14230(e). The Legislature concluded that research and public discourse is integral to addressing the "significant public health and public safety problem" posed by firearm violence. Cal. Penal Code § 14230(a), (g). At that time, the Legislature found that "[n]ationally, rates of fatal firearm violence have remained essentially unchanged for more than a decade, as declines in homicide have been offset by increases in suicide." *Id.* § 14230(a). It also found that suicide and accidental deaths exceeded the death toll of mass shootings, and that half the costs of hospitalizations from firearm violence came from "unintentional injuries" and "deliberate self-harm." *Id.* § 14230(b), (c). The Legislature thus called for "more research and more sophisticated research." *Id.* § 14230(e).

---

[3] The statute does not specify how long dealers may or must retain this information. *Id.* § 30352(b)(1).

7

To achieve its goal, the Legislature created the Firearm Violence Research Center within the University of California to "conduct basic, translational, and transformative research with a mission to provide the scientific evidence on which sound firearm violence prevention policies and programs can be based." Cal. Penal Code § 14231(a)(2). The Legislature provided that state agencies, including DOJ, "shall provide to the center, upon proper request, the data necessary for the center to conduct its research." 2016 Cal. Stat., ch. 24, § 30, codified as amended at Cal. Penal Code § 14231(c)(2).

In 2021, the Legislature enacted AB 173 to clarify the 2016 information-sharing requirement and the manner in which DOJ may provide information to other researchers. *See* 2021 Cal. Stat., ch. 253. AB 173 amended several Penal Code sections. It codified a new finding in Section 14230(e) that "California's uniquely rich data related to firearm violence have made possible important, timely, policy-relevant research that cannot be conducted elsewhere." *Id.* § 4. It went on to amend the statutes covering AFS (Section 11106) and APRF (Section 30352). *See id.* §§ 2, 2.5, 11. Section 11106 previously provided that DOJ "shall" share information from AFS with courts, peace officers, district attorneys, city attorneys, probation and parole officers, public defenders, other state and local officials when

8

needed to implement statutes or regulations, health officers, correctional officers, officers addressing animal cruelty, welfare personnel, and more. *See* Cal. Penal Code § 11106(b)(3) (2021 version) (cross-referencing Cal. Penal Code § 11105).  AB 173 added a provision expressly clarifying that AFS data must also be provided to the Firearms Violence Research Center and, at DOJ's discretion, may be provided to other vetted researchers, subject to institutional review board approval where necessary.  *See* 2021 Cal. Stat., ch. 253, § 2.5, codified at Cal. Penal Code § 11106(d).  And it added a similar provision to the ammunition background check law in Section 30352.  *See* 2021 Cal. Stat., ch. 253, § 11, codified at Cal. Penal Code § 30352(b)(2).

Regarding personal information, all of the relevant statutes specify that "[m]aterial identifying individuals shall only be provided for research or statistical activities and shall not be transferred, revealed, or used for purposes other than research or statistical activities, and reports or publications derived therefrom shall not identify specific individuals."  Cal. Penal Code §§ 11106(d), 14231(c)(3), 30352(b)(2).

## II.  PROCEDURAL HISTORY

### A.  Plaintiffs Challenge AB 173 on Several Grounds

Plaintiffs filed suit in January 2022 and moved for a temporary restraining order. 4-ER-813–14. The district court denied the motion principally because Plaintiffs had failed to seek this relief until 108 days after AB 173 went into effect, undermining any claim of imminent, irreparable harm. 1-ER-6; 4-ER-815. Plaintiffs then amended their complaint and moved for a preliminary injunction. 3-ER-531; 4-ER-816.

In the operative complaint, Plaintiffs mount a facial challenge to AB 173 based on four separate claims for relief. First, they claim they had a reasonable expectation of privacy in their personal data when it was submitted to DOJ, and so sharing it with researchers under AB 173 violates their constitutional right to informational privacy under the Fourteenth Amendment. 4-ER-561–65. Next, they assert that AB 173's information-sharing provisions impermissibly burden their exercise of their Second Amendment rights to keep and bear arms because this sharing "risks . . . Plaintiffs' privacy and physical security." 4-ER-565–68. Next, they assert that AB 173 constitutes an impermissible retroactive change to the law in violation of the Fourteenth Amendment's Due Process Clause. 4-ER-568–72. And finally, they assert that AB 173's information-sharing provisions are preempted because the CCW application form contains a space for the

applicant's social security number, which implicates federal requirements

relating to disclosure. 4-ER-572–74.

Plaintiffs seek a declaration that, among other things, AB 173's

amendments to California Penal Code sections 11106 (AFS) and 30352

(APRF) "are unconstitutional on their face," or, alternatively, that any

section of those statutes allowing the disclosure of personally identifying

information to researchers is unconstitutional.[4] 4-ER-574. They also seek to

enjoin DOJ from enforcing the statutory sections amended by AB 173 "in

their entirety," or at least to the extent that they permit disclosing personal

identifying information to researchers. 4-ER-575.

---

[4] Plaintiffs also purport to challenge AB 173's amendment to California Penal Code section 14231, *see* AOB 30; 4-ER-574, but Section 14231's mandate authorizing data-sharing predated AB 173. *See* Cal. Penal Code § 14231(c) (2021 version). With respect to data-sharing, AB 173 amended Section 14231 only to require institutional review board approval when necessary, to prohibit using any received data for purposes other than research or identifying specific individuals, and to direct that data-sharing should be done "in a timely manner." 2021 Cal. Stat., ch. 253, § 5. None of these provisions implicate Plaintiffs' challenges because they do not authorize or require the sharing of data. To the extent Plaintiffs seek to include in their appeal a distinct facial challenge to the preexisting data-sharing provisions of Section 14231, such a facial challenge would, in addition to being waived, fail because Section 14231 does not direct the sharing of any particular data with researchers. *See* Cal. Penal Code § 14231(c)(2).

After full briefing on Plaintiffs' motion for a preliminary injunction and the Attorney General's motion to dismiss and a hearing on these motions, the Supreme Court issued its decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), announcing a new standard to apply to Second Amendment claims. At the district court's direction, the parties submitted supplemental briefing on this issue. 1-ER-8; 2-ER-104–45; 2-ER-171–72. Plaintiffs also sought to renew their motion for a temporary restraining order based on a data exposure incident involving personal identifying information on a public-facing DOJ platform separate from any of the databases affected by AB 173. 1-ER-8–9, 40–41; 4-ER-818.[5]

## B. The District Court Dismisses the Complaint

The district court dismissed the complaint in its entirety and accordingly denied Plaintiffs' motion for a preliminary injunction. 1-ER-5. On Plaintiffs' informational privacy claim, the district court held that, considering the balancing test set forth in *In re Crawford*, 194 F.3d 954 (9th

---

[5] Before the district court issued a decision, AB 173's information-sharing provisions were preliminarily enjoined by a state court on state constitutional grounds. *See Brandeis v. Bonta*, No. 37-2022-00003676-CU-CR-CTL, 2022 Cal. Super. LEXIS 72360 (San Diego Super. Ct. Oct. 15, 2022), *appeal docketed and fully briefed sub nom. Barba v. Bonta*, No. D081194 (Cal. Ct. App., 4th Dist.).

Cir. 1999), "the disclosure provisions of AB 173 don't violate Plaintiffs' Fourteenth Amendment right to informational privacy." 1-ER-24. The information subject to sharing constitutes "routine ministerial records required by federal and California law" that contain "unremarkable" "biographical information that is generally available in many other public registries." 1-ER-21–22. It also rejected "Plaintiffs' contention that their biographical information and their status as known gun owners *in combination* poses a threat to them" as "unsupported." 1-ER-22. The court further found that "disclosure of the information to the research organizations is narrowly tailored to meet the State's legitimate interest in preventing gun violence" and that Plaintiffs' asserted concerns about harm from public disclosure did not outweigh these considerations. 1-ER-23–24.

On the Second Amendment claim, the district court held that AB 173's information-sharing provisions are the sort of "[a]ncillary regulations" that "don't restrict conduct covered by the plain text of the Second Amendment and are permissible." 1-ER-20; *see also* 1-ER-16 ("Laws requiring gun owners to comply with such ministerial tasks are presumptively valid and don't violate the plain text of the Second Amendment."). The court also rejected Plaintiffs' argument that AB 173's information-sharing prevents them from buying guns and ammunition or applying for CCWs by creating a

13

risk of their data being published, either through a hack or through "renegade researchers . . . surreptitiously releas[ing] their information to the public." 1-ER-16–17. These arguments, the court explained, "are entirely speculative and predictive of harm that is completely attenuated from the plain text and core protections of the Second Amendment." 1-ER-17. The court also rejected any Second Amendment chilling claim because AB 173 would not "deter" "a person of ordinary firmness . . . from exercising the protected right"; "considering the categorical prohibition on publicly disseminating any personal identifying information . . . the enhanced risks Plaintiffs fear are no more likely than the risks posed by many other California laws that compel citizens to furnish publicly available personal information." 1-ER-19.

The district court also rejected Plaintiffs' retroactivity and preemption claims. The retroactivity claim failed, it explained, because—while it was not clear that AB 173 even changed the law governing the sharing of AFS data in the first place—the law did not impose any new legal consequence on Plaintiffs since it did not constitute an invasion of their constitutional right to informational privacy. 1-ER-24–27. And "[e]ven assuming that AB 173 attaches new legal consequences," the court continued, "Plaintiffs' due process claim still fails because they haven't shown that the California

14

legislature acted in an arbitrary and irrational way." 1-ER-28. "[G]ranting vetted researchers access to study protected firearms data as a means of implementing § 14230 serves a legitimate legislative purpose in a rational and narrowly tailored manner." 1-ER-28. Finally, it rejected Plaintiffs' preemption claim—which addressed a space on the CCW application form for an applicant's social security number—because AB 173 does not regulate the contents of that form. 1-ER-29.

The court granted Plaintiffs a month in which to seek to amend their complaint. Plaintiffs declined and instead appealed. 1-ER-29–30; 4-ER-806. After this Court notified the parties of the jurisdictional issues this might create, Dkt. No. 2, Plaintiffs filed a motion in the district court for entry of judgment, which the district court granted. 1-ER-4.

## STANDARD OF REVIEW

This court reviews dismissal for failure to state a claim de novo. *See L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

## SUMMARY OF ARGUMENT

To sustain their facial challenge to AB 173, Plaintiffs "must show 'that no set of circumstances exists under which [the regulation] would be valid,' or . . . that the regulation 'lacks any plainly legitimate sweep.'" *Prison*

*Legal News v. Ryan*, 39 F.4th 1121, 1129 (9th Cir. 2022).  Plaintiffs attempt to meet this high bar on four different claims.  Each one fails.

First, Plaintiffs' informational privacy claim fails because AB 173 does not involve constitutionally protected information.  AFS and APRF contain standard biographical information, not the type of intensely private information this Court has held implicates the constitutional right to informational privacy.  Nor do Plaintiffs provide any support for the idea that the information becomes constitutionally protected merely because it is collected in connection with firearm or ammunition purchases or CCWs.

Plaintiffs' references to social security numbers and state-law expectations of confidentiality cannot rescue their claim.  Their social security number argument is a red herring:  they allege that the AFS database includes social security numbers taken from CCW application forms, but no statute requires issuing authorities to send DOJ those application forms.  Even if this Court were to credit this allegation—which it should not—limited disclosures of social security numbers to researchers under strict confidentiality rules would not implicate, let alone violate, the constitutional right to informational privacy.  And even if it did, Plaintiffs cannot sustain their facial challenge based on the statute's application to

16

social security numbers alone, when the statute also applies to the lawful sharing of numerous other types of data.

Plaintiffs also cannot cite any case—from this Court or others—for the proposition that a mere expectation of confidentiality in certain information makes that information constitutionally protected even where, as here, the information is innocuous. Moreover, Plaintiffs' asserted expectation of privacy is based on a misinterpretation of state law. Finally, even if AB 173 did implicate Plaintiffs' right to informational privacy, sharing this data with researchers is amply justified by the State's interest in facilitating high-quality research into firearm violence, and AB 173 is narrowly tailored to serve that legitimate government interest.

Second, Plaintiffs' Second Amendment claim fails because they lack standing: any injury they have suffered is entirely self-inflicted, and thus not traceable to AB 173. Moreover, their claim fails on the merits because AB 173 does not regulate conduct covered by the plain text of the Second Amendment. Plaintiffs' attempt to get around this by alleging an indirect burden on their Second Amendment rights is untethered from precedent and based on entirely speculative harms. And Plaintiffs' additional chilling and unconstitutional conditions theories are meritless—and, in the latter case, waived.

17

Third, Plaintiffs' retroactivity claim fails because AB 173 is not retroactive. Even if it were, it does not impose any new legal consequence on Plaintiffs because it does not violate their right to informational privacy. And even if it did that, AB 173 still satisfies the applicable rational basis test.

Fourth, Plaintiffs' preemption claim fails because they lack a cause of action and because their claim is based on a form that AB 173 does not regulate.

## ARGUMENT

### I. PLAINTIFFS' INFORMATIONAL PRIVACY CLAIM FAILS AS A MATTER OF LAW

#### A. AB 173 Does Not Implicate Constitutionally Protected Information

This Court has held that "federal constitutional law recognizes a 'right to informational privacy' stemming from 'the individual interest in avoiding disclosure of personal matters.'" *Endy v. County of Los Angeles*, 975 F.3d 757, 768 (9th Cir. 2020). This right, however, does not protect from disclosure information relating to all personal matters. The information in AFS and APRF is fundamentally different from the sensitive personal information this Court has held implicates the right to informational privacy, and the fact that this information relates to firearms ownership and carrying

18

does not change this. Plaintiffs' insistence that AB 173 results in the sharing of social security numbers has no statutory basis, because the form that asks for social security numbers is not required by any statute to be submitted to DOJ. Thus, by statute, AFS does not contain social security numbers from CCW applications. And Plaintiffs' remaining attempt to transform AFS and APRF data into constitutionally protected information is based on a misreading of state law and thus also fails.

### 1. AFS and APRF do not contain highly sensitive personal information

As this Court has recognized, "individuals may have a constitutional privacy interest in certain, highly sensitive information." *Doe v. Garland*, 17 F.4th 941, 947 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2815 (2022). This includes "medical diagnoses, reports of abuse, substance-abuse treatment records, and the like," *A.C. ex rel. Park v. Cortez*, 34 F.4th 783, 787 (9th Cir. 2022); information regarding the decision to seek an abortion, *Planned Parenthood of S. Arizona v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002); information regarding sexual activity, *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983); medical information, *Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998); and "information regarding an individual's HIV-status or AIDS diagnosis," *Doe*

19

*v. Att'y Gen. of U.S.*, 941 F.2d 780, 796 (9th Cir. 1991), *disapproved of on other grounds by Lane v. Pena*, 518 U.S. 187 (1996).

By contrast, this Court has treated basic biographical information as not protected. In *A.C. ex rel. Park v. Cortez*, minor plaintiffs asserted that accessing files of child-abuse investigations involving them without a court order violated their right to informational privacy. 34 F.4th at 785. This Court held that, because "it would not be unusual for such a file to contain intimate details that families would not share with strangers, including medical diagnoses, reports of abuse, substance-abuse treatment records, and the like," courts "may assume" that these files contained personal information sufficiently sensitive to trigger the right to informational privacy. *Id.* at 787. At the outset of an investigation, however, the file may only contain "relatively innocuous biographical data and academic records." *Id.* Consequently, "an individualized determination will be required at the threshold stage to determine whether a particular file contains" sensitive information triggering the right's protections, or instead contains mere "biographical data"—information that does not receive constitutional protection. *Id.*

AFS and APRF contain just such "relatively innocuous biographical data"—information like name, date of birth, and address. Cal. Penal Code

20

§ 28160(a); *id.* § 30352.  This is a far cry from the "highly sensitive information" in which "individuals may have a constitutional privacy interest."  *Doe v. Garland*, 17 F.4th at 947.  Sharing this information with vetted researchers subject to confidentiality controls therefore does not implicate the right to informational privacy.  As the district court correctly held, the "gun and ammunition purchase records collected by the DOJ are routine ministerial records required by federal and California law."  1-ER-21–22; *see* also 1-ER-22 (holding that the "nature" of the basic biographical information maintained by DOJ is "unremarkable").

Plaintiffs hardly argue otherwise.  They instead assert that this information is protected because it concerns Plaintiffs' exercise of their Second Amendment rights—a proposition this Court has never recognized. Appellants' Opening Brief (AOB) 44–45.  Contrary to Plaintiffs' suggestion, the exercise of one's Second Amendment rights does not entail the sort of social stigma that may follow from the disclosure of one's sexual activities. *See Silveira v. Lockyer*, 312 F.3d 1052, 1092 (9th Cir. 2002), *as amended* (Jan. 27, 2003) ("[T]he plaintiffs' interests in maintaining confidential the fact of their assault weapon ownership are minimal."), *abrogated on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008).  The fact that Plaintiffs own firearms and ammunition and are licensed to carry certain

21

firearms in public is categorically different from the type of sensitive medical information that this Court has recognized as constitutionally protected.

> **2. Plaintiffs' arguments regarding social security numbers are factually and legally flawed**

Plaintiffs largely ignore the core information contained in AFS and APRF and instead focus on the alleged inclusion in AFS of social security numbers from CCW applications. AOB 38. But this approach fails for multiple reasons. Most fundamentally, it fails because there is no statutory requirement for issuing authorities to send CCW applications to DOJ, and AFS therefore does not contain social security numbers from CCW applications. The statute creating AFS lays out precisely the types of information to be included in it. *See* Cal. Penal Code § 11106(a), (b). While these specified types of information do include certain information from CCW records submitted to DOJ by the issuing agency, CCW applications submitted by an applicant to an issuing agency are not among such records. *See id.* § 11106(a)(1)(C) (requiring inclusion of information reported to DOJ pursuant to Cal. Penal Code § 26225); *id.* § 26225(b) (requiring the local agencies charged with issuing CCWs to file with DOJ denials and issuances of CCWs but not applications); *see also* 4-ER-720 (DOJ document attached

22

to complaint explaining that AFS "is populated by," among other things, "Carry Concealed Weapons Permit records"). Plaintiffs have therefore not plausibly alleged that AFS includes social security numbers from CCW applications and that the sharing authorized by AB 173 would entail sharing social security numbers with researchers. *See Wilson v. Craver*, 994 F.3d 1085, 1095 n.8 (9th Cir. 2021) (court is "not required to 'accept as true allegations that contradict matters properly subject to judicial notice'"); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017) ("The Court may take judicial notice of . . . statutes . . . not included in the plaintiff's complaint."); *see also Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013) (holding factual allegation need not be credited at motion-to-dismiss stage where allegation was contradicted by statute).[6]

---

[6] The district court—based on affidavit evidence submitted in response to Plaintiffs' motion for a preliminary injunction, not on Plaintiffs' operative complaint—perceived a "conflict[]" in DOJ's statements on this point. 1-ER-10 n.1. No such conflict exists. Although a researcher indicated that he had received CCW application information from DOJ, *id.*, that information derives from the CCW permits themselves, which DOJ *does* receive and store in AFS and which *do not* contain social security numbers. *See* Cal. Penal Code § 11106(a)(1)(B); *compare id.* § 26175(c) (providing that CCW applications shall require "the name, occupation, residence, and business address of the applicant, the applicant's age, height, weight, [and] color of eyes and hair"), *with id.* § 26175(i) (providing that "[a]ny license issued upon the application shall set forth the licensee's name, occupation, residence and business address, the licensee's age, height, weight, [and] color of eyes and hair").

23

Even if AFS did include social security numbers from CCW
applications, Plaintiffs' reliance on *In re Crawford* is misplaced.  AOB 38.
There, this Court merely assumed, but did not hold, that social security
numbers are the sort of information protected from disclosure by the
Fourteenth Amendment, before concluding that the challenged disclosure
was sufficiently justified by the government's interest in disclosure.  *See In
re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999) (disclosure of social security
numbers "*may* implicate the constitutional right to privacy") (emphasis
added); *cf. Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 2023 WL
4673472, at *7 (9th Cir. July 21, 2023) (noting, in context of torts, that "[a]
person's  . . . 'social security number' [is] not 'generally considered
private'") (quoting *Russell v. Gregoire*, 124 F.3d 1079, 1082, 1094 (9th Cir.
1997)).  Moreover, this assumption did not apply to *all* disclosures of social
security numbers, but rather their "indiscriminate public disclosure."  *Id.*
Here, disclosure is neither indiscriminate nor public:  AFS data is disclosed
only to a narrowly defined class of individuals subject to strict
confidentiality protections.  *See* Cal. Penal Code § 11106(d).

Plaintiffs' complaints about the sharing of social security numbers from
CCW applications also cannot support their facial challenge to AB 173.
"[A] facial challenge must fail where the statute has a 'plainly legitimate

24

sweep,'" as AB 173 does. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Both AFS and APRF contain basic information relating to firearms and ammunition transactions, information that has nothing to do with social security numbers from CCW applications. Thus, Plaintiffs cannot "establish that no set of circumstances exists under which the Act would be valid,'" as required for a facial challenge. *Id.*

### 3.   State law does not create a constitutional right to privacy in AFS and APRF data

As a fallback, Plaintiffs argue that, even if the information in AFS and APRF is not protected from disclosure by the Fourteenth Amendment, the Fourteenth Amendment still prohibits the sharing of this information because Plaintiffs "reasonably expected the government to keep their personal information confidential," based on the pre-AB 173 statutory scheme. AOB 40. But as Plaintiffs recognize, this Court has never held that an individual's mere expectation of privacy in certain information triggers the Fourteenth Amendment's protections. AOB 39. Plaintiffs do not make any attempt to demonstrate why this Court should reach that conclusion here and, in the process, abandon its usual practice of carefully scrutinizing whether information implicates the right of informational privacy. *See, e.g.*, *Doe v. Garland*, 17 F.4th at 946–47.

Instead, Plaintiffs reach for a handful of out-of-circuit cases (AOB 39) that fail to advance their position because they all require an inquiry into the nature of the information over which the plaintiff asserts a reasonable expectation of privacy. *See Mangels v. Pena*, 789 F.2d 836, 839–40 (10th Cir. 1986) ("Allegations of a failure on the part of government officials to abide by their own assurances of confidentiality will not suffice to state a claim. Any disclosed information must itself warrant protection under constitutional standards."); *Sheets v. Salt Lake County*, 45 F.3d 1383, 1387 (10th Cir. 1995) ("The legitimacy of [an] expectation [of privacy] depends, 'at least in party, upon the intimate or otherwise personal nature of the material which the state possesses.'"); *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990) ("The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny."); *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) ("[W]e must examine the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession."); *James v. City of Douglas*, 941 F.2d 1539, 1544 (11th Cir. 1991) (recognizing constitutional protection for "intimate personal information obtained under a pledge of confidentiality").

26

In any event, it simply is not the case that Plaintiffs had a reasonable expectation of privacy in the biographical information contained in AFS based on the prior statutory scheme. Plaintiffs assert that, before AB 173, Penal Code section 11106 only permitted the disclosure of AFS data "for narrow, law enforcement-related purposes," thus providing an expectation that this information would not be shared for other purposes. AOB 41. Not so. Before AB 173, Section 11106 did impose a mandatory duty on the Attorney General to disclose AFS data to any official listed in California Penal Code section 11105 upon request. *See* Cal. Penal Code § 11106(a)(2) (2021 version). But the California Legislature understood in passing AB 173 to amend Section 11106 that it was "clarif[ying] the process and parameters of disclosure" of AFS and APRF information, not granting the Attorney General a new disclosure power. *See* Cal. Assembly Floor Analysis of AB 173 (Sept. 8, 2021), *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202 120220AB173#.

Nor did the pre-AB 173 version of Section 11105 cross-referenced in Section 11106 suggest that AFS data could only be shared for "narrow, law enforcement-related purposes." The version in effect immediately prior to AB 173's enactment, for example, went beyond "narrow, law enforcement-

27

related purposes": it listed some two dozen different entities and officials, including public defenders; local government officials where necessary in "fulfilling employment, certification, or licensing duties"; local health officials; local child support agencies; and, in some circumstances, "[a] humane society, or society for the prevention of cruelty to animals." Cal. Penal Code § 11105(b)(8), (11), (14), (16), (17) (2021 version).

Nor does AB 173 violate Plaintiffs' asserted expectation of privacy with respect to APRF data. While the pre-AB 173 version of Section 30352 did require that APRF data "remain confidential" and be used only for law enforcement purposes, Cal. Penal Code § 30352(b) (2021 version), the sharing authorized by AB 173 is entirely consistent with this language. Individual APRF data remains confidential: AB 173 expressly prohibits the publication of any research that identifies any specific individuals. Cal. Penal Code § 30352(b)(2) (current version). Moreover, as the district court recognized, it was proper "for the state to enlist assistance from trained researchers and research organizations to study [the problems of gun violence] and to suggest solutions based on their review of pertinent firearm data." 1-ER-25 n.7.

And finally, with respect to the concealed carry plaintiffs, any expectation of privacy in their applications premised on the prior statutory

28

scheme is actually *un*reasonable, as, at the local level, these applications have been public records disclosable to the public at large under California law for decades. *See CBS, Inc. v. Block*, 725 P.2d 470, 471, 473–77 (Cal. 1986). Consistent with that long-standing practice and understanding, the CCW application prescribed by California law, which Plaintiffs appended to their complaint, requires the applicant to affirmatively acknowledge "that information contained in this application may be a matter of public record and shall be made available upon request or court order." 4-ER-715.[7]

## B. AB 173 Does Not Impermissibly Invade Plaintiffs' Right to Informational Privacy

Even if AB 173 did implicate Plaintiffs' constitutional right to informational privacy, this right "'is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest.'" *Endy*, 975 F.3d at 768. Where the government's "use of the information would advance a legitimate state interest" and "its actions are narrowly tailored to meet the legitimate interest," there is no constitutional

---

[7] To the extent the Court finds that there was a reasonable expectation of privacy in AFS and APRF data before AB 173's passage and that this expectation is constitutionally significant, it would not affect the information-sharing under AB 173 generally. Rather, this would be relevant to individuals who purchased firearms or ammunition or applied for CCWs before AB 173 took effect.

violation. *In re Crawford*, 194 F.3d at 959. In applying this test, courts consider (1) the type of record; (2) the information it contains; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) the public interest in access. *Id.* It is the "overall context, rather than the particular item of information, that will dictate the tipping of the scales." *Id.*

As the district court correctly held, these factors weigh in the State's favor here. There is indisputably a legitimate public interest in access to the information at issue here. As a clarification of the California Firearm Violence Research Act, AB 173 advances and builds upon that act's purposes. *See* Cal. Penal Code § 14230. In enacting both laws, the Legislature made the incontestable finding that "[f]irearm violence is a significant public health and public safety problem in California and nationwide." *Id.* § 14230(a); *see also District of Columbia v. Heller*, 554 U.S. 570, 636 (2008) ("We are aware of the problem of handgun violence in this country . . . ."). The Legislature also concluded that "[t]oo little is known about firearm violence and its prevention . . . in substantial part because too little research has been done." Cal. Penal Code § 14230(e). To

30

this end, the law directs DOJ to share its firearms data, including "[m]aterial identifying individuals," with the Firearm Violence Research Center. *Id.* §§ 11106(d), 30352(b)(2); *see id.* § 14231(c)(3). That "uniquely rich data related to firearm violence" is crucial to "important, timely, policy-relevant research that cannot be conducted elsewhere." *Id.* § 14230(e). There is therefore "an express statutory mandate, articulated public policy, [and] other recognizable public interest militating toward access." *A.C. ex rel. Park*, 34 F.4th at 787. Indeed, Plaintiffs conceded as much below and do not appear to challenge this on appeal. *See* SER-11–12 (TRO hearing transcript) ("[W]e do not contest that the state has a legitimate interest."); 3-ER-425–34 (Plaintiffs' MTD Opp'n) (challenging narrow tailoring but not legitimacy of "state's interest in the prevention and treatment of 'firearm violence'"); 3-ER-346–48 (MTD hearing transcript) (similar); *see also, e.g.*, AOB 55 (recognizing "the State's interest in developing policies to prevent firearm violence" but asserting that the research AB 173 enables is not narrowly tailored to and does not advance that interest).

The safeguards against misuse are also sufficient, as recipients of data under AB 173 are prohibited from publishing anything that would identify any individual. *See* Cal. Penal Code §§ 11106(d), 30352(b)(2); *see also NASA v. Nelson*, 562 U.S. 134, 155 (2011) (recognizing that "a 'statutory or

31

regulatory duty to avoid unwarranted disclosures' generally allays these privacy concerns"); *Whalen v. Roe*, 429 U.S. 589, 600–01 (1977) (holding that the possibility information could be made public because government employees "may violate the statute by failing, either deliberately or negligently, to maintain proper security" of that information was not "proper ground for attacking the statute as invalid on its face").

Nor does the nature of the information or the speculative risk of harm in any subsequent nonconsensual disclosure cut in Plaintiffs' favor. Because the information involved is not "inherently sensitive or intimate information and its disclosure does not lead directly to injury, embarrassment or stigma," the "realization of [Plaintiffs'] injury still requires . . . additional, nongovernmental [actors]" taking unlawful actions after the information is shared with researchers. *In re Crawford*, 194 F.3d at 960. Plaintiffs assert that further disclosures will put them at risk of harassment and theft, AOB 54, but their allegations are based on reports about incidents at gun stores and two decade-old newspaper articles from New Jersey and Virginia that fail to actually attribute any theft or harassment to the publication of personal firearm information. 4-ER-558; 4-ER-743–748. "To weigh properly the privacy interest involved, the dire consequences of identity theft

32

must be discounted by the probability of its occurrence." *In re Crawford*, 194 F.3d at 959.

Plaintiffs further assert that the "need for access" factor cuts in their favor because, in their view, there are insufficient standards governing the sharing that AB 173 authorizes. AOB 45–50. To make this argument, Plaintiffs rely on *Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir. 1983), where this Court held that a city violated a job applicant's right to informational privacy where, as part of the job interview process, it allowed the interviewer to question the applicant about their sexual activity and morality without setting "standards, guidelines, definitions or limitations" for this questioning. *Id*. at 470; *see* AOB 45–46.

AB 173, by contrast, does not authorize sharing of an unlimited set of highly sensitive information; it involves datasets of standard biographical information whose contents are clearly and narrowly prescribed by law. *Compare Thorne*, 726 F.2d at 470 (interviewer "was given free reign [sic] to inquire into any area he chose"). The information itself necessarily relates to the State's interest in reducing firearm violence. AB 173 allows sharing this limited set of information only with entities doing violence prevention research that serves the State's interest in reducing firearms violence. The California Firearm Violence Research Center's entire mission—enacted by

33

statute—is to conduct research on firearm violence and its prevention. *See* Cal. Penal Code § 14231(a). And the other entities with which information may be shared must be "nonprofit bona fide research institution[s] accredited by the United States Department of Education or the Council for Higher Education Accreditation for the study of the prevention of violence." *Id.* § 11106(d). Moreover, requests for information must be approved by the requesting institution's institutional review board where necessary. *Id.* This lacks any resemblance to the standardless, roving inquiry into the most intimate recesses of private life that this Court rejected in *Thorne*.

## II. AB 173 DOES NOT VIOLATE THE SECOND AMENDMENT ON ITS FACE

### A. Plaintiffs' Self-Imposed Injury Does Not Grant Them Standing

"'[T]he jurisdictional issue of standing can be raised at any time.'" *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009). Indeed, "the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). While this threshold issue was not addressed before the lower court, Plaintiffs here lack standing to bring their Second Amendment claim. *See Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1233

(9th Cir. 2017) (Article III of the U.S. Constitution "requires 'a plaintiff [to] demonstrate standing for each claim he seeks to press and for each form of relief that is sought'").

Article III standing requires the plaintiff to establish, among other things, that the injury they have suffered "is fairly traceable to the challenged conduct of the defendant." *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 988 (9th Cir. 2023). In support of their Second Amendment claim, Plaintiffs allege that AB 173 injures them because it has "dissuaded" them from purchasing firearms and ammunition and from applying for or renewing CCWs. 4-ER-536–43. They contend that the information they must disclose in these processes will end up in AFS or APRF and will likely be shared with research institutions under AB 173, and then, they fear, may end up being made public—either through a hack or through "partisan and/or ideological activists or organizations, with established political and ideological bias against the rights guaranteed under the Second Amendment, . . . obtain[ing] access to Plaintiffs' Personal Information by associating themselves and their researchers with the California Firearm Violence Research Center or any other accredited nonprofit bona fide research institution" and then publishing their data online. 4-ER-559. "Faced with

such risks," Plaintiffs assert, they "are understandably afraid that having their identities disclosed will put them and their families at risk." 4-ER-559.

A law prohibiting individuals from purchasing firearms or ammunition, or from applying for a CCW, may well constitute a sufficiently concrete injury for standing purposes. But Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). By choosing not to exercise their Second Amendment rights, Plaintiffs are doing exactly that. As the district court recognized in rejecting Plaintiffs' claim on the merits, the doxing or hacking that Plaintiffs fear are not certainly impending; "they are entirely speculative." 1-ER-17. There was "no claim . . . that personal information supplied by the DOJ to [researchers] has been hacked." 1-ER-17. And "Plaintiffs' other fear—that dissident researchers might intentionally breach DOJ protocols by publicly leaking their personal information—is equally unsubstantiated." 1-ER-18. These are both mere "speculative possibilit[ies]." 1-ER-18. Because AB 173 does not create any risk of these harms that is "certainly impending," Plaintiffs' "self-inflicted injuries are not

36

fairly traceable to" AB 173. *Clapper*, 568 U.S. at 418. Plaintiffs therefore lack standing to bring their Second Amendment claim.[8]

### B. AB 173 Does Not Violate the Second Amendment Under *Bruen*

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, the Supreme Court clarified the analysis required for Second Amendment claims. 142 S. Ct. 2111, 2125–26 (2022). Courts must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129–30. If so, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

In clarifying this standard, the Court was careful to note that *Bruen* did not purport to overturn or call into question any aspect of the Court's decision in *Heller*. To the contrary, the Court described the analytical

---

[8] If Plaintiffs instead claim that their injury is the risk of doxing or hacking itself, they lack standing for much the same reason. *See id.* at 410, (holding that a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending").

approach articulated in *Bruen* as the same "test . . . set forth in *Heller*."

*Bruen*, 142 S. Ct. at 2131. Moreover, the Court described the first step of

the inquiry that courts of appeals had applied post-*Heller*—asking whether

"'the challenged law regulates activity falling outside the scope of the

[Second Amendment] right as originally understood'"—as "broadly

consistent with *Heller*." *Id.* at 2126–27; *see also United States v. Alaniz*, 69

F.4th 1124, 1128 (9th Cir. 2023) ("*Bruen* upheld the step one inquiry used

by the Courts of Appeals as 'broadly consistent with *Heller*.'") (quoting

*Bruen*, 142 S. Ct. at 2127). Consistent with this approach, *Bruen* reaffirmed

that the Second Amendment is not a "regulatory straightjacket." *Bruen*, 142

S. Ct. at 2133. Justice Kavanaugh, joined by Chief Justice Roberts, wrote

separately to underscore the "limits of the Court's decision," explaining that

the Second Amendment "allows a 'variety' of gun regulations" and

reiterating *Heller*'s pronouncement that one of the presumptively lawful

categories of laws includes those "imposing conditions and qualifications on

the commercial sale of arms." *Bruen*, 142 S. Ct. at 2161–62 (Kavanaugh, J.,

concurring).

    *Bruen*'s first step "involves a threshold inquiry" that "requires a textual

analysis, determining whether," *inter alia*, "the 'proposed course of conduct'

falls within the Second Amendment." *Alaniz*, 69 F.4th at 1128 (quoting

*Bruen*, 142 S. Ct. at 2134–35)—*i.e.*, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms" for lawful purposes. U.S. Const. amend. II; *see also Bruen*, 142 S. Ct. at 2134. In conducting that textual analysis, "the regulated conduct must be defined specifically enough that it can meaningfully compare to the Second Amendment's plain text." *United States v. Reyna*, 2022 WL 17714376, at *4 (N.D. Ind. Dec. 15, 2022). That ensures that the Second Amendment does not become a "regulatory straightjacket," *Bruen*, 142 S. Ct. at 2133, and gives effect to the Supreme Court's repeated recognition that the Second Amendment is subject to reasonable limits. *Id.* at 2128; *id.* at 2157 (Alito, J., concurring); *id.* at 2161–62 (Kavanaugh, J., concurring). It is a plaintiff's burden to demonstrate that the plain text covers the proposed course of conduct, *Bruen*, 142 S. Ct. at 2134, and courts that have applied the *Bruen* framework have held plaintiffs to that burden. *See, e.g.*, *Or. Firearms Fed'n v. Kotek Or. All. for Gun Safety*, 2023 WL 4541027, at *5 n.4 (D. Or. July 14, 2023) ("[T]he burden is on the plaintiff, in the first instance, to show that the challenged law implicates conduct covered by the plain text of the Second Amendment."), *appeals docketed* Nos. 23-35478, 23-35479 (9th Cir.); *Wolford v. Lopez*, --- F. Supp. 3d ----, 2023 WL 5043805, at *17 (D. Haw.

39

Aug. 8, 2023); *Def. Distributed v. Bonta*, 2022 WL 15524977, at \*4–5 (C.D. Cal. Oct. 21, 2022).

Plaintiffs have not met their burden here, as AB 173 "'regulates activity falling outside the scope of the right as originally understood.'" *Bruen*, 142 S. Ct. at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)); *see also id.* at 2126–27 (providing *Kanter* as example of analysis that is "broadly consistent with *Heller*"). They present their proposed course of conduct as "purchasing firearms and ammunition, and applying for, obtaining, and renewing a CCW." AOB 58. But AB 173 does not "'regulate[]'" any of these activities. *See, e.g.*, *Oakland Tactical Supply, LLC v. Howell Twp.*, 2023 WL 2074298, at \*3 (E.D. Mich. Feb. 17, 2023) ("The proposed conduct could not be simply 'training with firearms' because the zoning ordinance does not prohibit 'training with firearms.'"). Nor does it regulate what sorts of arms an individual may possess, or how these arms may be manufactured or sold, or anything related to an individual's possession and use of arms. In fact, AB 173 says nothing whatsoever about whether an individual may "keep and bear Arms." U.S. Const., amend. II. Plaintiffs can "keep and bear Arms" just as much after AB 173's enactment as before. The only activity that AB 173 regulates is DOJ's sharing of a specific set of information it has already collected with a

specific set of researchers subject to strict privacy controls.  *See* Cal. Penal Code §§ 11106(d), 30352(b)(2).  Defined at the proper level of specificity, then, Plaintiffs' "proposed course of conduct" is preventing the transfer of data in DOJ's possession to researchers.  And the Second Amendment says nothing about that.

Plaintiffs and amicus nonetheless contend that AB 173's authorized information-sharing "burdens" their Second Amendment rights.  AOB 58; *see also* Amicus Br. 7 ("Under *Bruen*, Appellants need only show that AB 173 affects their Second Amendment Rights.").  This argument is untethered from *Bruen*, *McDonald*, and *Heller*, which addressed laws that directly *prevented* the plaintiffs from exercising their Second Amendment rights. *Bruen*, 142 S. Ct. at 2156 (striking down law that "prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms"); *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010) (addressing law "effectively banning handgun possession by almost all private citizens"); *Heller*, 554 U.S. at 628 (striking down law that "totally bans handgun possession in the home").

Accepting Plaintiffs' theory would eliminate *Bruen*'s textual analysis. Properly understood, this analysis does not ask whether the challenged law has *any* tangential effect on the ease with which one may exercise their

41

Second Amendment rights. Were it otherwise, virtually all generally applicable zoning regulations (which may prevent selling firearms in residential neighborhoods), sales taxes (which increase the cost of firearms), and other laws with some theoretical downstream consequence on the availability of firearms would be subject to *Bruen*'s historical requirement. *Bruen* itself rejected this possibility: it suggested that concealed carry licensing regimes that "do not necessarily *prevent* 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry" were constitutional while noting that there could be challenges to public carry licensing regimes "where, for example, lengthy wait times in processing licensing applications or exorbitant fees *deny* ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9 (emphasis added).

Here, Plaintiffs have not identified any tangible effect AB 173 might have on the exercise of their Second Amendment rights. Plaintiffs claim that they are required to "forego their informational privacy" and that their data could be exposed through "negligence or even intentional malfeasance." AOB 61. But, as explained, the sharing of data that DOJ already possesses with researchers subject to strict confidentiality controls does not violate Plaintiffs' informational privacy rights. *See supra* at pp. 18–34. And, as the district court recognized, the possibility of the researchers being hacked or

42

doxing Plaintiffs is "entirely speculative." 1-ER-17. As the Supreme Court has explained, "data breaches are a possibility any time the Government stores information," and "the mere possibility that security measures will fail provides no 'proper ground' for a broad-based attack on government information-collection practices." *NASA*, 562 U.S. at 158.

Because Plaintiffs' claim fails at *Bruen*'s textual stage, the Court need not address *Bruen*'s historical analysis. To the extent the Court disagrees and finds the textual inquiry has been satisfied, it should remand to allow for the development of the factual record needed for the resolution of the historical inquiry. *See Bruen*, 142 S. Ct. at 2130 n.6 ("Courts are thus entitled to decide a case based on the historical record compiled by the parties."); *Teter v. Lopez*, --- F.4th ----, 2023 WL 5008203, at *6 (9th Cir. Aug. 7, 2023) (declining to remand summary judgment appeal because court stated it could "confidently decide [the issue]" without historical record development by the parties).

## C. Plaintiffs' Chilling Claim Has No Basis in the Law

Although Plaintiffs seek to advance some form of a chilling argument against AB 173, its precise nature is unclear. At times Plaintiffs appear to advance a standalone Second Amendment chilling claim. *See* AOB 16 (presenting as a separate issue "Whether the district court erred in

concluding that Appellants did not state a claim that AB 173 impermissibly chills the exercise of their Second Amendment rights in violation of the Fourteenth Amendment.").  If so, Plaintiffs have waived this claim by failing to adequately plead it.  *See Zixiang Li v. Kerry*, 710 F.3d 995, 1000 & n.4 (9th Cir. 2013); *see also* 4-ER-561–74 (Complaint); 3-ER-435–38 (Opp'n MTD).

Whatever its precise nature, Plaintiffs cannot point to any cases where this Court has imported this First Amendment doctrine into the Second Amendment context.  Indeed, what this Court has said on the matter cuts directly against Plaintiffs' position.  In *San Diego County Gun Rights Committee v. Reno*, this Court rejected the plaintiff's argument that being subjectively chilled from the exercise of their Second Amendment rights constituted injury in fact for standing purposes.  98 F.3d 1121, 1129–30 (9th Cir. 1996), *abrogated on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008).  "[T]he 'existence of a chilling effect . . . has never been considered a sufficient basis, in and of itself, for prohibiting . . . [government] action,'" the Court explained, and the "only exception to this general rule has been the relaxed standards for overbreadth facial challenges involving protected speech."  *Id.* at 1129.

Regardless, Plaintiffs' argument fails on its own terms because sharing the relevant information with a limited set of researchers subject to strict confidentiality protections would not "'chill or silence a person of ordinary firmness from future [Second] Amendment activities." *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). As the district court recognized, the risks posed by AB 173 are not meaningfully different from "the risks posed by many other California laws that compel citizens to furnish publicly available personal information . . . includ[ing] property title and land ownership registries, electoral rolls, and court documents."[9] 1-ER-19; *cf. Silveira*, 312 F.3d at 1092 ("[T]he plaintiffs' interests in maintaining confidential the fact of their assault weapon ownership are minimal."). Moreover, Plaintiffs are simply wrong to state (AOB 70) that they would lack a remedy if their information was unlawfully made public. *See, e.g.*, Cal. Civ. Code § 1798.53.

Plaintiffs' reference to *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747 (1986), *overruled on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992), is unavailing on this point. Even if the Second Amendment right were

---

[9] If anything, AB 173 is less intrusive than these examples, as it does not make any information "publicly available."

45

analogous for these purposes to a "personal, intensely private, right . . . to end a pregnancy," the challenged statute in *Thornburgh* made reports of an abortion "available. . . to the public for copying" with "no limitation on the use to which [Pennsylvania] or the public copiers may put them." *Id.* at 766–67. Here, by contrast, routine biographical information is only shared with a limited set of vetted researchers subject to strict confidentiality protections. *See* Cal. Penal Code § 11106(d). Nor does the possibility of a data breach change this analysis. *See NASA*, 562 U.S. at 158.

### D. Plaintiffs Waived Their Unconstitutional Conditions Claim, Which Fails in Any Event

For the first time on appeal, Plaintiffs invoke the unconstitutional conditions doctrine, arguing that AB 173 impermissibly conditions the purchase of firearms[10] on sharing personal information with researchers. AOB 70–71. Even if Plaintiffs hadn't waived this theory by failing to assert it below,[11] the unconstitutional conditions doctrine is analytically mismatched to the issues in this case: it applies where the government "'den[ies] a *benefit* to a person on a basis that infringes his constitutionally

---

[10] Plaintiffs do not appear to advance this argument as to purchasing ammunition or obtaining a CCW. AOB 71.

[11] *But see, e.g.*, *Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010).

protected interests,'" *Bingham v. Holder*, 637 F.3d 1040, 1046 (9th Cir. 2011) (emphasis added), whereas Plaintiffs' complaint arises from the exercise of their Second Amendment *rights*. Plaintiffs' unconstitutional conditions argument fails on the merits, too. "The doctrine prevents the Government from using conditions 'to produce a result which it could not command directly.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1377 n.4 (2018). But, as explained above, *see supra* at pp. 18–34, the sharing of AFS and APRF data with a limited set of researchers subject to strict confidentiality protections does not violate the Constitution. "[T]here can be no 'unconstitutional conditions' when there is no unconstitutionality." *Hotop v. City of San Jose*, 982 F.3d 710, 718 (9th Cir. 2020).

## III. PLAINTIFFS' RETROACTIVITY CLAIM FAILS AS A MATTER OF LAW

Plaintiffs argue that, because the pre-AB 173 statutory scheme (in their view) "expressly limited disclosure of Appellants' personal information," AB 173's authorization of information-sharing violated the Fourteenth Amendment's guarantee of due process. AOB 72.

This claim fails, too. First, its premise is incorrect: as noted, the pre-AB 173 statutory scheme did not expressly limit the sharing of AFS and

APRF data in the way Plaintiffs assert. *See supra* at pp. 27–28. The district court recognized as much, explaining that "[i]n fact, the pre-AB 173 version of § 11106 didn't expressly limit the purposes for which information could be shared to just those enumerated in the statute's text." 1-ER-26. Consequently, AB 173 did not retroactively change the law. *See* Cal. Assemb. Floor Analysis of AB 173 (Sept. 8, 2021), *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202 120220AB173# (describing bill as "clarif[ying] the process and parameters of disclosure" of AFS and APRF information). Even if it did, "[i]t is not enough that a statute . . . 'upsets expectations based in prior law.'" *Polone v. CIR*, 505 F.3d 966, 972 (9th Cir. 2007). "[A] statute must actually 'attach[] new legal consequences' to completed, past conduct." *Id.* The only legal consequence Plaintiffs identify is the "violati[on of] Appellants' right to informational privacy." AOB 73. But AB 173 does not violate Plaintiffs' right to informational privacy. *See supra* at pp. 18–34. Even putting that aside, Plaintiffs' claim would still fail because "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means." *Bowers v. Whitman*, 671 F.3d 905, 916 (9th Cir. 2012). Plaintiffs do not seriously attempt to argue otherwise. AOB 73. As the district court explained, "granting vetted researchers access to study protected firearms

data . . . serves a legitimate legislative purpose in a rational and narrowly tailored manner."  1-ER-28.[12]

## IV. PLAINTIFFS' PREEMPTION CLAIM FAILS AS A MATTER OF LAW

Plaintiffs raise a final argument briefly addressing what they view as a deficiency in the CCW application form.  AOB 73–75.  Under the federal Privacy Act of 1974, whenever a government agency "requests an individual to disclose his social security account number," it must "inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it."  5 U.S.C. § 552a (note); Pub. L. No. 93-579, § 7(b), 88 Stat. 1909 (1974).  The uniform CCW application form, they observe, includes a field for the applicant's social security number but does not include this required information.  AB 173, they conclude, is therefore preempted.  AOB 74–75.

As an initial matter, Plaintiffs lack a cause of action for this claim. While their complaint references only the Constitution's Supremacy Clause, 4-ER-572, "the Supremacy Clause is not the 'source of any federal rights,'"

---

[12] As with Plaintiffs' reasonable expectation of privacy argument, *see supra* at p. 29 n.7, any retroactivity issue would not affect all sharing under AB 173, but just that regarding purchases and CCW applications from before AB 173 took effect.

and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (citations omitted). Nor can this claim proceed in equity. A federal court's equitable authority to "enjoin unlawful executive action is subject to express and implied statutory limitations," and a federal statute may "establish Congress's 'intent to foreclose' equitable relief." *Id.* at 327–28. The Privacy Act does so, as its "civil remedy provisions . . . do not apply against private individuals, state agencies, private entities, or state and local officials." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999) (emphasis removed); *see* 5 U.S.C. § 552a(g)(1); *see also Armstrong*, 575 U.S. at 328 ("the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'").

Plaintiffs' preemption claim fails on the merits, too. The challenged application form is not created or authorized by AB 173; it is authorized by a separate California statute. *See* Cal. Penal Code § 26175(a). And that statute does not require the inclusion of a field for the applicant's social security number. *See id.* § 26175(c). To the extent there is a conflict with federal law, it is with the form itself—not any part of AB 173. As the district court correctly held, "there is no conflict between the text of AB 173

50

and that of the Federal Privacy Act implicating a *statutory* preemption issue." 1-ER-29.[13]

## CONCLUSION

The judgment should be affirmed.


Dated: August 16, 2023           Respectfully submitted,


                                 ROB BONTA
                                 Attorney General of California
                                 THOMAS S. PATTERSON
                                 Senior Assistant Attorney General
                                 PAUL STEIN
                                 Supervising Deputy Attorney General



                                 *s/ Sebastian Brady*
                                 SEBASTIAN BRADY
                                 Deputy Attorney General
                                 *Attorneys for Defendant Attorney General*
                                 *Rob Bonta*

SA2023300886
43840645.docx

---

[13] This argument also fails for the separate reason that AFS does not contain, and so AB 173 does not authorize sharing, social security numbers from CCW applications. *See supra* at pp. 22–23.

23-55133

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**JANE DOE, an individual, et al.,**

                                        Plaintiffs,

    **v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,**

                                        Defendants.

---

**STATEMENT OF RELATED CASES**

    To the best of our knowledge, there are no related cases.


Dated:  August 16, 2023        Respectfully submitted,

                                    ROB BONTA
                                    Attorney General of California
                                    THOMAS S. PATTERSON
                                    Senior Assistant Attorney General
                                    PAUL STEIN
                                    Supervising Deputy Attorney General

                                    *s/ Sebastian Brady*
                                    SEBASTIAN BRADY
                                    Deputy Attorney General
                                    *Attorneys for Defendant Attorney General Rob Bonta*

52

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55133

I am the attorney or self-represented party.

**This brief contains** | 9,965 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Sebastian Brady | **Date** | 8/16/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

# CERTIFICATE OF SERVICE

Case Name:   ***Doe, Jane, et al. v. Rob Bonta [Appeal]***          Case No.   **23-55133**

I hereby certify that on August 16, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## ANSWERING BRIEF

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on August 16, 2023, at San Francisco, California.

K. Figueroa-Lee
Declarant

Signature

SA2023300886
43840479.docx